Argued July 13, reversed September 15, 1914.
On rehearing former decision affirmed October 20, 1914.

## In Re McCORMICK'S ESTATE.
## BRANCH v. McCORMICK'S ESTATE.

(143 Pac. 915; 144 Pac. 425.)

**Statutes—Special and Local Laws—Court Practice.**

1. A statute attempting to transfer all probate business and jurisdiction of the County Court in Multnomah County to the Circuit Court, leaving Section 1241, L. O. L., relating to the proceedings in a County Court on a claim against a decedent's estate to apply to the Circuit Court, violates Article IV, Section 23, subdivision 3, of the Constitution, forbidding any local or special laws regulating the practice in courts of justice.

   [As to what are local or private laws, see notes in 23 Am. Dec. 543; 1 Am. St. Rep. 903.]

**Jury—Right to Trial by Jury—Statutory Provision.**

2. Though Section 1241, L. O. L., provides for hearing and determining in a summary manner all demands against an estate, a person presenting a claim for $4,682.77 against an estate is entitled to trial by jury.

   [As to conditions and restrictions that may be imposed by legislation upon trial by jury, see note in 98 Am. St. Rep. 538.]

**Jury—Right to Trial by Jury—Waiver.**

3. One presenting a claim against a decedent's estate can waive the right to trial by jury only as provided by statute.

**Executors and Administrators—Claims Against Estate—Form of Remedy.**

4. Section 1241, L. O. L., authorizing a trial in the County Court in a summary manner of a claim against a decedent's estate, is not exclusive, but, under Section 386, authorizing the commencement of an action against an executor or administrator at any time after six months from the granting of letters testamentary or of administra-

tion till final settlement, the matter may be sued in the Circuit Court directly.

### ON REHEARING.

**Statutes—Special Laws—Court Practice—"Trial Jury."**

5.   In view of Section 935, L. O. L., giving the County Court concurrent jurisdiction where the subject of controversy does not exceed the value of $500, and exclusive jurisdiction of actions of forcible entry and detainer, Section 936, giving the County Court exclusive jurisdiction in probate proceedings, Section 987, defining a trial jury as a body of men, 12 in number in the Circuit Court, and 6 in the County Court and courts of the justices of the peace, and Section 1135, prescribing the procedure in County Courts in probate proceedings by citation, etc., Laws of 1913, page 769, providing an additional circuit judge for the fourth judicial District Court, abolishing the office of the county judge in Multnomah County, transferring its business to the Circuit Court, and installing the then county judge in the office of Circuit Court judge till his successor is elected and qualified, and repealing all acts and parts of acts in conflict therewith, is in violation of Article IV, Section 23, of the Constitution, prohibiting special laws regulating practice in courts of justice.

**Statutes—Special Laws—"Practice."**

6.   Within Article IV, Section 23, of the Constitution, prohibiting special laws regulating the practice in courts of justice, "practice" means those legal rules which direct the course of procedure to bring parties into court, and the course of the court after they are brought in, and includes the formula by which the court's jurisdiction is first asserted and afterward exercised in respect to any litigation in all its phases, till finally completed.

**Courts—"Jurisdiction."**

7.   "Jurisdiction" as applied to courts is power to hear and determine issues of laws and fact, which means authority to perform any judicial function.

**Statutes—Special Laws—Creation of Courts.**

8.   Article VII,. Section 1, of the Constitution, declaring that the judicial power shall be vested in one Supreme Court and in such other courts as may be created by law, does not authorize the legislature to establish new courts in violation of Article IV, Section 23; forbidding special laws regulating practice in courts of justice.

**Constitutional Laws—Repeal of Constitutional Provisions—Implied Repeal.**

9.   Repeals of constitutional provisions by implication are not favored.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

H. W. McCormick in his lifetime sold the timber on two sections of land in Washington to one Cain for

72 Or.—39

$25,000, and took a note for that amount to be paid each month as the timber was removed during a period of seven years. McCormick afterward assigned his contract with Cain and the said note for $25,000 to Carmody, and in connection with the assignment guaranteed to Carmody, or his assigns, that there was a certain quantity of timber on the land, and that Carmody would realize $21,500 therefrom. Carmody thereafter assigned the note and contract with the said guaranty to Branch, the plaintiff here. After removing timber and paying for the same to the amount of $8,040, Cain became insolvent and abandoned the contract. Branch thereafter sold the remaining timber to Zufelt and received $8,539.63 therefor, which was less than the guaranty, and this suit is brought to recover the balance of the $21,500. The trial of the case resulted in a judgment in favor of plaintiff for the amount of $4,682.77. Both parties appeal. Many issues are raised as to the diligence of Branch and Carmody in collecting the money and as to the quantity of timber on the land, but there is one error that makes it necessary to send the case back, and renders it unnecessary to consider the other assignments.

REVERSED.

For appellant there was a brief over the names of *Messrs. Lewis & Lewis* and *Messrs. Dysert & Ellsbury,* with an oral argument by *Mr. Andrew T. Lewis.*

For respondent there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Defendant first questions the authority of the Circuit Court to try the claim of Branch against the

McCormick estate; also the validity of the act of the legislature which attempts to transfer all probate business and jurisdiction of the County Court in Multnomah County to the Circuit Court. This is in violation of Article IV, Section 23, subdivision 3, of the Constitution, in that it is local and special in attempting to regulate the practice of the courts of justice in Multnomah County, without any change in the practice in the County Court as it relates to probate work, leaving Section 1241, L. O. L., to control in the trial of claims against the estate disallowed by the administrator. Said section was attempted to be followed in this proceeding in the Circuit Court. The Circuit Court cannot try a case summarily. The effect of the act is to attempt to transfer the practice in the County Court in Multnomah County to the Circuit Court without any attempt to change or modify the procedure in regard to probate matters to fit the Circuit Court practice, without which the former has to be followed in probate matters which we see cannot be done.

2, 3. Furthermore, the plaintiff has a right to trial by jury, which he did not waive by remaining silent. He could waive it only in the manner provided by the Code. The term "summary proceeding," as used in Section 1241, L. O. L., means without special formality or without a formal pleading, and does not necessarily mean a trial without a jury. In *Wilkes* v. *Cornelius,* 21 Or. 341, 348 (23 Pac. 473, 28 Pac. 135), as in *Pruitt* v. *Muldrick,* 39 Or. 353 (65 Pac. 20), the case is in the nature of an action at law, and must be tried anew when taken before the county judge. The legislature did not intend by Section 1241 to preclude a jury trial. This is also followed in *Johnston* v. *Shofner,* 23 Or. 111 (31 Pac. 254).

4. However, the method of trial provided in Section 1241 is not exclusive, but, under Section 386, L. O. L., by a statement of the proper facts, the matter may be sued in the Circuit Court directly: See *Pruitt* v. *Muldrick,* 39 Or. 356 (65 Pac. 20). This case was not commenced in the Circuit Court under Section 386, but was brought before the Circuit Court under Section 1241. It was not in the power of the legislature to transfer the practice in Multnomah County in probate matters to the Circuit Court and make that the practice of the Circuit Court, which was the intended effect of the act. Although this court has held that the probate practice is in the nature of an equity proceeding, yet the trial of a claim against an administrator is a trial at law, and the parties have a right to a jury trial: See *In re Chambers' Estate,* 38 Or. 131 (62 Pac. 1013), in which Judge WOLVERTON says that the claim may be contested in the County Court before a jury if desired.

The decree is reversed and the cause remanded for further proceedings.                                         REVERSED.

MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.

---

Decided October 20, 1914.

ON REHEARING.

(144 Pac. 425.)

In Banc. The former decision rendered September 15, 1914, in this appeal, affirmed on rehearing and judgment of the Circuit Court reversed.

For appellant there was a brief over the names of *Messrs. Lewis & Lewis* and *Messrs. Dysart & Ellsbury,* with an oral argument by *Mr. Andrew T. Lewis.*

For respondent there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. John McCourt.*

*Mr. Charles W. Fulton, Mr. Martin L. Pipes, Mr. George S. Shepherd, Mr. William W. McCredie, Mr. George A. Brown, Mr. George B. Cellars, Mr. Miller Murdock* and *Mr. Virgil A. Crum, amici curiae.*

Mr. Justice Burnett delivered the opinion of the court.

5. There is drawn in question in this case the constitutionality of Chapter 378 of the Laws of 1913, entitled:

"An act to provide an additional circuit judge for the fourth judicial district of the State of Oregon; to abolish the office of county judge in Multnomah County, Oregon, and provide for the transfer to the Circuit Court of said fourth judicial district of all the judicial business and jurisdiction of the said County Court; providing that the present incumbent of said office of county judge shall be and shall serve as the additional circuit judge created by this act until his successor is elected and qualified, as herein provided."

The first section of the act provides for the election of one circuit judge in addition to the five circuit judges now provided by law for the fourth judicial district of the State of Oregon comprising Multnomah County. Section 2 declares that:

"The duties, powers and jurisdiction of said circuit judge shall be such as are prescribed by law and the salary shall be the same as the salary now, or hereafter, received by the other circuit judges of said district and be paid in like manner. The circuit judge herein provided shall sit in a department to be named or designated as department No. 6."

Section 3 abolishes the office of county judge, and installs the then incumbent of that office to be a circuit judge of the fourth judicial district of the state "to exercise all the powers and jurisdiction of a circuit judge until his successor is elected and qualified as provided in Section 1 of this act."    Section 4 provides that:

"Upon the taking effect of this act all judicial jurisdiction, power and authority of the county judge and of the County Court of said Multnomah County, as distinguished from such power and jurisdiction as is exercised in the transaction of county business, shall then, and thereafter, be vested in and exercised by the Circuit Court of the said fourth judicial district, and all said matters, causes and proceedings pending in said County Court shall be considered as transferred, continued, heard and disposed of in the said Circuit Court."

Section 5 provides substantially that as far as practicable all matters relating to probate shall be heard in department No. 6; and Section 6 repeals all acts and parts of acts in conflict with the statute under consideration.    This is an enactment of the legislative assembly of the state.    It does not purport to create any new court.    Both the title and the body of the act attempt to enlarge the number of circuit judges in a certain district.    Its language could not well be plainer on that point.    It attempts to destroy a County Court and regulate the practice of a single Circuit Court so as to supply the deficiency.

Article IV, Section 23, of the Constitution, says that:

"The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say * * 3. Regulating the practice in courts of justice."

It is plain that whatever the people at large may do by virtue of the initiative power reserved to themselves, the legislative assembly is subject to the restriction just mentioned respecting the enactment of special and local laws.

It is provided in Section 935, L. O. L., that:

"The County Court has jurisdiction, but not exclusive, of actions at law and all proceedings therein, and connected therewith, where the claim or subject of the controversy does not exceed the value of $500, and exclusive jurisdiction of actions for forcible entry and detainer, without reference to the value of the property."

Section 936, L. O. L., reads thus:

"The County Court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is—1. To take proof of wills; 2. To grant and revoke letters testamentary of administration and of guardianship; 3. To direct and control the conduct and settle the accounts of executors, administrators, and guardians; 4. To direct the payment of debts and legacies, and the distribution of the estates of intestates; 5. To order the sale and disposal of the real and personal property of deceased persons; 6. To order the renting, sale, or other disposal of the real and personal property of minors; 7. To take the care and custody of the person and estate of a lunatic or habitual drunkard, and to appoint and remove guardians therefor; to direct and control the conduct of such guardians, and settle their accounts; 8. To direct the admeasurement of dower."

6. It is provided in Section 1135, L. O. L., that in probate proceedings the County Court exercises its powers by means of, among others, a citation to the party. Appeals are authorized from the County Court to the Circuit Court in all matters triable in the County Court whether in the actions at law mentioned in Sec-

tion 935, L. O. L., or in probate proceedings, and other kindred matter. In Section 987, L. O. L., a trial jury is defined as a body of men, 12 in number in the Circuit Court, and 6 in number in the County Court and courts of justice of the peace. All these matters relate to practice in the courts of justice within the meaning of the Constitution.

"Bouvier defines the word 'practice' as 'the form, manner, and order of conducting and carrying on suits or prosecutions in the courts, through their various stages, according to the principles of law and the rules laid down by the respective courts.' * * The word 'practice' means those legal rules which direct the course of procedure to bring parties into court, and the course of the court after they are brought in. * * 'Practice' is defined by Burrill as 'the course of procedure in the courts, which, in a general sense, includes pleadings.' Rapalje and Lawrence define practice as 'the law which regulates the formal steps in an action or other proceeding; which therefore deals with writs, summons, pleadings, affidavits, notices, motions, petitions, orders, trials, judgments, appeals, costs and executions' ": 6 Words and Phrases, p. 5486, and authorities there cited.

7. From these we deduce the principle that jurisdiction as applied to courts is power to hear and determine issues of law and fact, which means authority to perform any judicial function. Practice includes the formula by which that power is first asserted and afterward exercised in respect to any litigation in all its phases, until the same is finally completed.

The situation presented is that, while in the different counties of the state outside of Multnomah County a suitor may bring an action in the County Court where the value of the controversy does not exceed $500, and may appeal first to the Circuit Court and afterward

to the Supreme Court, in case of an adverse decision
in the courts of first instance, if he should begin his
litigation in Multnomah County, he would meet with
a different practice, whereby he would be compelled
to commence his action in the Circuit Court and be
deprived of his right of appeal to that court which
he would enjoy in other counties.   In other counties
in probate matters the County Court would exercise its
authority by means of citation.    The method of obtain-
ing jurisdiction in the Circuit Court is by service of
summons, and this would necessarily be the rule in the
Circuit Court in Multnomah County.   A jury of six
men would be unknown in that county except in Jus-
tice's Court, while in the County Courts of all the other
counties a jury of that number is the rule.    These are
but a few illustrations relating to matters of practice
which would be swept away by the act of the legislative
assembly in question which is made to apply solely to
Multnomah County.    The situation is not improved
if we give any effect to the *omnibus* repealing clause.
With an eye single to a particular locality, the legis-
lative assembly has attempted to formulate a scheme of
practice in the Circuit Court sitting there, and has said
in so many words that all acts and parts of acts in con-
flict with that project are repealed.    No exception is
made as to any other county, although the jurisdiction
and practice of their County Courts depend upon laws
inconsistent with the act under consideration.    If this
law is constitutional it is constitutional throughout the
state, and we cannot refuse to give effect to its repeal-
ing clause, for it contains matter properly connected
with the subject expressed in the title to the act, within
the meaning of Section 20, Article IV, of the Constitu-
tion.    It is a question of whether the County Court of
Multnomah County shall be perpetuated as against its

attempted abolition or whether the other County Courts of the state have fallen with it under the all-devastating repeal.

8. It is argued that the section of the Constitution against special and local laws to which allusion has been made is overcome and superseded by Article VII, Section 1, in its latest form, declaring that:

"The judicial power of the state shall be vested in one Supreme Court and in such other courts as may from time to time be created by law."

9. The contention seems to be that the law-making power, proceeding under this clause, may establish any number and kind of courts within its discretion without let or hindrance. This may be conceded to the people in their unconfined legislative power by means of the initiative, but as to the legislative assembly it is controlled in the exercise of its function by the other provisions of the Constitution. Repeals by implication are not favored. It is also a standard rule of construction that all parts of a law must be construed to stand, and if possible made to harmonize, and that no strained construction will be permitted to overcome or dispense with the plain meaning of the words employed. There is nothing in the new form of Article VII of the Constitution indicating an intention to repeal or amend any other section of that instrument. The restriction upon the legislative assembly as to local and special laws is left untouched. The plain, common-sense construction to be placed upon the activities of the legislative assembly in establishing new courts is that, in respect to regulating the practice in courts of justice, it must proceed by general laws, and not by local or special enactments, so that the uniformity of practice may not be impaired or destroyed.

It is indeed true that we ought not to declare a law unconstitutional. unless its inconsistency with the fundamental law is plain and palpable; but when the legislative assembly violates the mandatory restraints laid upon it by the people in the Constitution, it is equally our sworn duty to give effect to the will of the people as against their inattentive representatives and declare such an act void. In at least the respect mentioned, the act of the legislative assembly in question is clearly a transgression upon the restriction of the Constitution, and for this reason, if for no other, the judgment of the Circuit Court should be reversed.

REVERSED.

FORMER DECISION AFFIRMED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE delivered the following dissenting opinion:

The opinion heretofore filed in this case leaves undecided the *status* of probate cases heard and determined in department No. 6 of the Circuit Court as constituted in pursuance of the act of March 4, 1913 (Laws 1913, c. 378), and upon this rehearing it seems appropriate to consider that question. The act referred to, including the title, is as follows:

"To provide an additional circuit judge for the fourth judicial district of the State of Oregon; to abolish the office of county judge in Multnomah County, Oregon, and to provide for the transfer to the Circuit Court of said fourth judicial district of all the judicial business and jurisdiction of the said County Court; providing that the present incumbent of said office of county judge shall be and shall serve as the additional circuit judge created by this act until his successor is elected and qualified, as herein provided.

"Be it enacted by the people of the State of Oregon:

"Section 1. That in addition to the five circuit judges now provided by law for the fourth judicial district of the State of Oregon, comprising Multnomah County, there shall be elected on the first Tuesday after the first Monday in November, A. D. 1914, and at the general election every six years thereafter, one circuit judge in said district who shall possess the qualifications prescribed by law for circuit judges, and whose term shall commence on the first Monday of January, A. D. 1915, and who shall hold office for the term of six years and until his successor is elected and qualified.

"Sec. 2. The duties, powers and jurisdiction of said circuit judge shall be such as are prescribed by law and the salary shall be the same as the salary now, or hereafter, received by the other circuit judges of said district and be paid in like manner. The circuit judge herein provided shall sit in a department to be named or designated as department number 6.

"Sec. 3. The office of county judge for the county of Multnomah is hereby abolished and the present incumbent of said office is hereby created a circuit judge of the said fourth judicial district to sit in department number 6 provided for in the preceding section of this act and to hold such office and to exercise all the powers and jurisdiction of a circuit judge until his successor is elected and qualified as provided in Section 1 of this act.

"Sec. 4. Upon the taking effect of this act all judicial jurisdiction, power and authority of the county judge and of the County Court of said Multnomah County, as distinguished from such power and jurisdiction as is exercised in the transaction of county business shall then, and thereafter, be vested in and exercised by the Circuit Court of said fourth judicial district, and all said matters, causes and proceedings pending in said County Court shall be considered as transferred, continued, heard and disposed of in the said Circuit Court.

"Sec. 5.    As far as is practicable all matters relating to the administration of estates of decedents, minors, and other legally incompetent persons and probate matters generally, shall be referred to and heard and considered in said department number 6.

"Sec. 6.    All acts and parts of acts in conflict herewith are hereby repealed."

Taking this act in its entirety, and having in view the maxim that if any reasonable construction can be given it consistent with its validity, it may be said to contemplate transferring the county judge, together with his powers in probate matters, to another court, or to a special department of another court, and investing that newly organized court with the power not only to hear and determine matters in probate, but also and in addition to these to perform the duties of a circuit judge.    It will be noted that the authority in probate matters thus granted is not vested in all departments of the Circuit Court, but is practically confined to the department there created; Section 5 of the act providing that "as far as practicable" all matters in probate shall be heard in that department.    The phrase "as far as practicable" is somewhat indefinite, but may fairly be presumed to refer to such instances and perhaps to others of like character as are specified in Section 939, L. O. L., and in subsequent amendments thereto, which provide that under certain circumstances a circuit judge may act in place of the county judge. The effect of the act is to create a new court *sui generis,* possessing some of the powers and functions of a County Court and all of the powers and functions of a Circuit Court.    Under the Constitution as it existed before the amendment to Article VII, which went into effect November 8, 1910, this could not have been done. Article VII, Section 1, of the original Constitution

vested the judicial power of the state in the Supreme, Circuit and County Courts, and defined the jurisdiction of each. The amendment referred to vested the judicial power in the Supreme Court, and such other courts as might thereafter be established by law, leaving it wholly in the power of the legislature or the people by the initiative to alter, abolish or create such courts as they might see fit. The legislature has created this new tribunal and named it department No. 6 of the Circuit Court of Multnomah County; but, looking beyond the name, we find that it is a court with other and different powers from those possessed by the other five departments. It is a new court invested with probate jurisdiction not granted to any Circuit Court or to any other department of any Circuit Court. While the question is not without difficulty, and the propriety of such legislation open to criticism, we cannot say that we are satisfied beyond a reasonable doubt of its unconstitutionality, and such is the test to be applied to a law in determining its constitutionality: *Cline* v. *Greenwood,* 10 Or. 230; *State* v. *Cochran,* 55 Or. 157, 180 (104 Pac. 419, 105 Pac. 884), and cases there cited. This rule of construction should be especially observed in cases like the present, where grave and even disastrous consequences might ensue from lightly deciding a statute unconstitutional. To state the matter concretely, the act does not affect the practice in the County Court because the County Court has ceased to exist. It does not change the practice in the Circuit Court because the court created by this act, while denominated a Circuit Court in the act, is in reality a new court exercising the powers of the Circuit Court and other powers not theretofore belonging to the Circuit Court. As before remarked, it is a new court possessing a jurisdiction theretofore vested in two

courts.   The main difficulty lies not in the fact that the
act has changed the practice of the Circuit Court or
of the County Court, but in the fact that it has cre-
ated practically a new court and failed to provide
forms of procedure, leaving these to future legislation.
In such a dilemma a remedy is provided in Section
983, L. O. L., which is as follows:

"When jurisdiction is, by the organic law of this
state, or by this Code or any other statute, conferred
on a court or judicial officer, all the means, to carry it
into effect are also given; and in the exercise of the
jurisdiction, if the course of proceeding be not spe-
cifically pointed out by this Code, any suitable process
or mode of proceeding may be adopted which may
appear most conformable to the spirit of this Code."

This section has been invoked in this state as shown
by *State* v. *Savage,* 36 Or. 191 (60 Pac. 610, 61 Pac.
1128).   Therefore it was natural and proper for the
new court in probate proceedings to adopt those forms
sanctioned by long usage in the County Court so far
as they seemed applicable under changed conditions;
but the provisions for a summary trial without a jury
were not so applicable, for the reason that in every
matter involving a simple money demand the parties
somewhere along the line are entitled to a jury trial.
This constitutional right was secured under the old
system by allowing an appeal to the Circuit Court
from the summary trial in the County Court: Section
1241, L. O. L.   It is obvious that this practice would
be wholly inapplicable in the tribunal created by the
act of 1913, *supra,* as it would involve an appeal from
the decision of the court sitting in probate to the same
court sitting as a Circuit Court, or as humorously
suggested on the hearing, "An appeal from Philip
drunk to Philip sober."

The practice theretofore obtaining in the Circuit Court was the only method by which the contending parties could secure the constitutional right to a jury trial, and, as this was not waived in the manner provided by the Code, the case should be remanded to the Circuit Court with directions to award a jury and retry the case by that method, unless both parties expressly waive a jury in the manner required by Section 157, L. O. L.

For the reasons above given, I dissent from so much of the opinion as holds that part of the act transferring probate business to the Circuit Court unconstitutional.

Mr. Justice Moore and Mr. Justice McNary concur in this dissent.