Argued October 22, demurrer sustained October 24, 1914.

## STATE EX INF. *v.* HOLMAN.

(144 Pac. 429.)

**Counties—County Board—Creation.**

1. Under Article VII, Section 12, of the Constitution, empowering the legislative assembly to provide for the election of two members to sit with the county judge while transacting county business, or to provide a separate board for transacting such business, the legislative assembly had authority to create a board of county commissioners of Multnomah County, and, as attempted in Laws of 1913, page 768, Section 2, to name the person who should constitute the third member of that board to act with two members previously elected pursuant to Section 2944, L. O. L.

**Counties—County Boards—Statutory Provisions.**

2. Article VII, Section 12, of the Constitution, empowering the legislative assembly to provide for the election of two members to sit with the county judge while transacting county business or to provide

a separate board for transacting such business, is not affected by Article VII, Section 2, as amended (see Laws 1911, p. 7), providing that the judicial system shall remain as at present constituted till otherwise provided by law, and even if Section 12 became obsolete, the organic act not forbidding such acts, the legislative assembly may create a board of county commissioners for any county.

### Judges—Tenure of Office.

3. Laws of 1913, page 769, attempting to appoint the county judge of Multnomah County a judge of the Circuit Court, being void, and the judge not having resigned, he remained the *de jure* county judge.

### Judges—Term of Office—Constitutional Provisions.

4. Under Article VII, Section 1, of the Constitution, adopted November 8, 1910 (see Laws 1911, p. 7), providing that the judges of the supreme and other courts shall be elected for a term of six years, and Article II, Section 14, fixing the first Monday in January after each general election as the date of commencement of the terms of all officers, the term of a county judge elected November 8, 1910, extends six years from the first Monday in January, 1911.

### Judges—Validity of Acts—County Judge.

5. Laws of 1913, page 769, appointing the county judge of Multnomah County a judge of the Circuit Court, being void, and the judge continuing as *de jure* county judge, all orders, judgments and decrees by him are valid and binding as to matters in probate and guardianship proceedings.

### Judges—Validity of Acts—Circuit Judge.

6. Under Section 939, L. O. L., as amended by Laws of 1911, page 427, authorizing Circuit Court judges to sit as county judges in certain cases, and Section 799, subdivision 15, L. O. L., declaring the disputable presumption that official duty has been regularly performed, the judgments and decrees of judges of the Circuit Court as to matters exclusively within the jurisdiction of the County Court of Multnomah County are valid and binding.

### Judges—Authority—De Facto Judges.

7. Where a department of the Circuit Court was organized in Multnomah County pursuant to Laws of 1913, page 769, appointing the county judge a Circuit Court judge for such department, and the act was declared void, the judge was acting as a *de facto* judge, and all orders, judgments and decrees by the judge in the Circuit Court, whether of his own or another county, are valid and binding upon all parties unless his authority was duly challenged before any determination.

> [As to who are *de facto* officers, see note in 19 Am. Dec. 63. As to validity of appointment by *de facto* officer, see note in Ann Cas. 1913C, 1042.]

Original proceedings in Supreme Court.

This is an original proceeding by the State on the information of Walter H. Evans, District Attorney

for Multnomah County, against Rufus C. Holman. A demurrer filed by the defendant to the information was sustained and the action dismissed. The facts upon which the action are founded are set forth in the opinion of the court.          DISMISSED.

In support of the demurrer an oral argument was presented by *Mr. Elmer E. Coovert.*

*Contra,* oral arguments were presented by *Mr. Walter H. Evans,* District Attorney, and *Mr. Arthur A. Murphy,* Deputy District Attorney.

There were also oral arguments by *Mr. Wallace McCammant* and *Mr. A. E. Clark, amici curiae.*

In Banc. MR. JUSTICE MOORE delivered the opinion of the court.

This is an action analogous to *quo warranto* instituted in this court, in the name of the state, upon the information of Walter H. Evans, the proper prosecuting attorney, to ascertain the right of Rufus C. Holman to act as county commissioner of Multnomah County, Oregon; to determine the efficacy of orders made, judgments given, and decrees rendered by Thomas J. Cleeton while acting as a circuit judge of that county and of other counties of the state; and also to decide the validity of orders, etc., made, given and rendered in all probate matters in Multnomah County since Chapter 378 of the General Laws of Oregon of 1913 purported to go into effect. A demurrer to the information presents the inquiries to be considered. Chapter 378 of the General Laws of Oregon of 1913 filed in the office of the Secretary of State March 4, 1913, reads:

"Section 1. That in addition to the five circuit judges now provided by law for the fourth judicial district of the State of Oregon, comprising Multnomah County, there shall be elected on the first Tuesday after the first Monday in November, A. D. 1914, and at the general election every six years thereafter, one circuit judge in said district who shall possess the qualifications prescribed by law for circuit judges, and whose term shall commence on the first Monday of January, A. D. 1915, and who shall hold office for the term of six years and until his successor is elected and qualified.

"Sec. 2. The duties, powers and jurisdiction of said circuit judge shall be such as are prescribed by law and the salary shall be the same as the salary now, or hereafter, received by the other circuit judges of said district and be paid in like manner. The circuit judge herein provided shall sit in a department to be named or designated as department number 6.

"Sec. 3. The office of the county judge for the county of Multnomah is hereby abolished and the present incumbent of said office is hereby created a circuit judge of the said fourth judicial district to sit in department number 6 provided for in the preceding section of this act and to hold such office and to exercise all the powers and jurisdiction of a circuit judge until his successor is elected and qualified as provided in Section 1 of this act.

"Sec. 4. Upon the taking effect of this act all judicial jurisdiction, power and authority of the county judge and of the County Court of said Multnomah County, as distinguished from such power and jurisdiction as is exercised in the transaction of county business, shall then, and thereafter, be vested in and exercised by the Circuit Court of said fourth judicial district, and all said matters, causes and proceedings pending in said County Court shall be considered as transferred, continued, heard and disposed of in the said Circuit Court.

"Sec. 5. As far as is practicable all matters relating to the administration of estates of decedents,

minors and other legally incompetent persons and probate matters generally, shall be referred to and heard and considered in said department number 6.

"Sec. 6.   All acts and parts of acts in conflict herewith are hereby repealed."

At the same time Chapter 377 was also filed in the same manner and is as follows:

"Section 1.   That in addition to the two county commissioners for Multnomah County, Oregon, now provided for by law, there shall be elected on the first Tuesday after the first Monday in November, A. D. 1914, and at the general election every four years thereafter, one county commissioner for said Multnomah County, who shall possess the qualifications prescribed by law for the office of county commissioner, whose term shall commence on the first Monday in January, A. D. 1915, and shall hold office for a period of four years and until his successor is elected and qualified.   The said commissioner shall receive the same salary as now provided by law for county commissioners of Multnomah County, to be paid in like manner, and he shall have the same powers, perform the same duties and have the same obligations as the county commissioners of said county now provided for by law.

"Sec. 2.   The vacancy created in the County Court of Multnomah County, sitting as the board of county commissioners, by the act of the legislative assembly abolishing the office of county judge, shall be filed by Rufus C. Holman, who shall be known as a county commissioner of Multnomah County, as the present commissioners are designated, and shall hold office until the first Monday in January, 1915, and until his successor is elected and qualified as provided in Section 1 of this act.   His salary shall be in the amount and paid in the manner specified in Section 1.

"Sec. 3.   Upon taking effect of this act, and thereafter, the county commissioners of Multnomah County shall be known as the board of county commissioners of Multnomah County.   Said board shall have power

to appoint a chairman from among their own number and remove him at pleasure, and shall have and possess, exercise and enjoy all the powers and jurisdiction now possessed, exercised and enjoyed by the County Court of Multnomah County, sitting for the transaction of county business.

"Sec. 4. All acts and parts of acts in conflict herewith are hereby repealed."

Section 2 of the act last quoted assigns a reason for the appointment of Mr. Holman. It is wholly immaterial what cause prompted his selection, if the legislative assembly had power to create the board of county commissioners of that county and to name as a member thereof a qualified elector who should hold the office until his successor could be elected.

1. It appears that pursuant to Section 2944, L. O. L., that at the general election held in that county November, 1910, D. V. Hart was elected a county commissioner thereof for the term of four years, and at the election held therein in November, 1912, W. L. Lightner was also elected a county commissioner thereof for a like term, each of whom was to sit with the county judge of that county for the transaction of county business. The organic act of the state empowers the legislative assembly to provide for the election of two commissioners to sit with the county judge while transacting county business in any or all of the counties of the state, or a separate board for transacting such business may be provided. Article VII, Section 12, of the Constitution. It will thus be seen that the legislative assembly had ample power to create the board of county commissioners of Multnomah County. That department of the state government also possessed authority to name the person who should constitute the third member of that board:

*Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115) ; *State ex rel.* v. *George,* 22 Or. 142 (29 Pac. 356, 29 Am. St. Rep. 586, 16 L. R. A. 737) ; *Eddy* v. *Kincaid,* 28 Or. 537 (41 Pac. 156, 655) ; *State ex rel.* v. *Compson,* 34 Or. 25 (54 Pac. 349).

2. Section 2 of Chapter 377 of the statute in question may as well have stated that Rufus C. Holman was considered well qualified for the office, and therefore he was named and to "be known as a county commissioner of Multnomah County," as to have assigned the reason thus given for his selection. Article VII, Section 12, of the state Constitution is adequate for the purpose stated, and is not affected by Section 2 of that · article as amended, since such alteration makes no change in the judicial system of Oregon, until some law is enacted on the subject. Even if Article VII, Section 12, became obsolete by the amendment referred to, there is nothing in the organic act of the state inhibiting the legislative assembly from creating a board of county commissioners for any county in Oregon, and since such power is not expressly forbidden, the authority undoubtedly continues. We, therefore, unanimously conclude that Rufus C. Holman is a duly appointed, legally qualified and acting county commissioner of that county, and a member of the board of county commissioners thereof, and as such in all acts relating to the transacting of county business, in which the other county commissioners were authorized to take part, he was also empowered to participate, and hence all proceedings heard and determined by such board, if otherwise legal, constitute a valid exercise of the right conferred.

3. In view of the decision rendered in the case of *In re McCormick's Estate,* 72 Or. 608 (143 Pac. 915), and on rehearing October 20, 1914 (144 Pac. 425), it is con-

ceded that the provision of Section 3 of Chapter 378 of the General Laws of Oregon of 1913, which undertook to abolish the office of county judge of Multnomah County, was void. Notwithstanding the county judge of that county was by such act attempted to be appointed a circuit judge of the fourth judicial district of Oregon, as he never resigned, he remained in office as the *de jure* county judge of that county.

4. It appears that Thomas J. Cleeton was duly elected county judge of Multnomah County November 8, 1910, at which time the organic act of Oregon was amended, making the term of the judges of all courts in this state six years. Article VII, Section 1 of the Constitution. This amendment was ratified, and he was elected when the polls closed on the evening of the day of election. Counting the ballots cast for candidates for the several offices to be filled, and upon the questions of the adoption or rejection of measures submitted to the qualified electors, and declaring the results, was only a ministerial act. As the choice of such county judge and the approval of the amendment of Section 1 of Article VII of the fundamental law occurred simultaneously, that amended organic act was in force when Judge Cleeton was elected and his term of office is necessarily six years from the first Monday in January, 1911. Article II, Section 14 of the Constitution.

5. Judge Cleeton being thus the legitimate county judge of Multnomah County, all orders, judgments and decrees made, given or rendered by him since he assumed the duties of that office are valid and binding so far as the right to hear and determine matters coming before him in probate and guardianship proceedings is concerned.

6. A clause of Section 939, L. O. L., as amended reads:

"When the county judge is ill or incapacitated from attending court, or absent from the county of which he is the county judge, any circuit judge for said county may perform the functions of said county judge, hear proceedings, and enter any judgment, order or decree necessary to carry into effect the jurisdiction of said court in probate and guardianship matters with the same force and effect as if done or performed by the county judge when present in said county": Chapter 242, General Laws Or. 1911.

Invoking the disputable presumption that official duty has been regularly performed (Sec. 799, subd. 15, L. O. L.), it will be taken for granted, in the absence of all evidence upon the subject, that sufficient statutory reasons existed whereby judges of the Circuit Court for Multnomah County were authorized to hear and determine matters exclusively within the jurisdiction of the County Court of that county, a *de jure* court, and such circuit judges being thus *de facto* county judges, *pro hac vice,* all orders, judgments and decrees made by either of them in that court relating to probate and guardianship proceedings are valid and binding.

7. From the opinions handed down in the case of *In re McCormick's Estate,* 72 Or. 608 (143 Pac. 915, 144 Pac. 425), it will be assumed that the attempt by Chapter 378 of the General Laws of Oregon of 1913 to organize department No. 6 of the Circuit Court of the fourth judicial district created at least a *de facto* court for Multnomah County. When, therefore, Judge Cleeton heard and determined causes in such court, he was acting as a *de facto* judge thereof, and all orders, judgments and decrees made, given and ren-

dered by him therein are conclusive, valid and binding upon all parties, unless his authority in such matters was duly challenged before any determination was reached therein: *State ex rel.* v. *Ely*, 16 N. D. 569 (113 N. W. 711, 14 L. R. A. (N. S.) 638); *Lang* v. *Bayonne*, 74 N. J. Law, 455 (68 Atl. 90, 122 Am. St. Rep. 391, 12 Ann. Cas. 961, 15 L. R. A. (N. S.) 93). A party cannot be permitted to wait until an adverse judgment or decree is rendered against him and then claim that the judge before whom his cause was tried was powerless to determine the issues involved. It is to be expected that when the authority of a judge is thus challenged the objection will be overruled and jurisdiction asserted and maintained. A foundation will thus be laid, however, whereby the action of the court in such particular can be reviewed on appeal. Without such objection the power to hear and determine all causes tried in a *de facto* court by a *de facto* judge must, for the sake of peace, the promotion of the interests of parties litigant, and of the welfare of society be conceded to be valid.

In the trial of causes by Judge Cleeton in the Circuit Courts of the state for counties other than Multnomah, as these courts are *de jure* tribunals and Judge Cleeton only a *de facto* judge of a Circuit Court, all orders, judgments and decrees made, given or rendered by him therein are valid and binding, except when challenged in the manner indicated.

A desire to reach a speedy conclusion in the case at bar has prevented an examination of all the questions presented with that degree of care which their importance demands. The members of this court have not all concurred in the views hereinbefore expressed with respect to the authority of Judge Cleeton and the

character of the court undertaken to be created, but a majority thereof coincide in the results here reached.

It follows that the demurrer is sustained and this action dismissed.                    ACTION DISMISSED.