Argued October 25, affirmed in part, modified in part and re-
manded December 8, 1954, argued on rehearing May 2,
former opinion modified June 29, 1955

## SHARE *v.* WILLIAMS ET UX.

277 P. 2d 775
285 P. 2d 523

*P. J. Gallagher,* of Ontario, argued the cause for appellants.

*W. F. Schroeder,* of Vale, argued the cause for respondent.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND, TOOZE and PERRY, Justices.

PERRY, J.

Plaintiff commenced an action in forcible entry and detainer in the justice court of Malheur county to obtain possession of the following described lands:

> The Northwest Quarter of the Northwest Quarter (NW¼ NW¼) and the East Half of the Northwest Quarter (E½ NW¼) and three (3) acres in the Southwest Quarter of the Northeast Quarter (SW¼ NE¼) all lying and being in Section Eighteen (18), Township Twenty (20) South, Range Forty-six (46) E.W.M., Malheur County, State of Oregon, containing 123 acres more or less, and all appurtenances thereunto belonging.

A trial in the justice court resulted in a hung jury, and the defendants having filed an affirmative answer in equity, the cause was transferred to the circuit court of Malheur county. In the trial in the circuit court, the trial court granted a decree denying the equitable

defense set up by the defendants and ordering the restitution of the possession of the land to the plaintiff. From this adverse decision the defendants have appealed.

The admitted facts to be considered in a determination of this controversy are as follows:

On February 21, 1949, plaintiff and his wife, Cora E. Share, and the defendant, H. H. Williams (as "Harvey H. Williams") and his sister, the defendant Edith Williams, entered into a contract wherein the plaintiff and his wife agreed to sell and the defendants agreed to purchase the above-described real property for the sum of $14,800, of which sum $6,000 was paid at the time of the execution of the contract, and the balance of $8,800, with interest at 5 per cent per annum, was to be paid in equal annual installments of $1,500 until fully paid, the first payment to be made on or before January 1, 1950. It was further agreed that time and strict performance was of the essence of the contract, and that upon the failure of the defendant purchasers to fully perform, the plaintiff and his wife, at their option, might declare the contract terminated and again take possession of the premises; that all payments made were to be retained by the plaintiff and his wife as liquidated damages and as a reasonable rental. The United States National Bank of Portland, Ontario Branch, at Ontario, Oregon, was to and did become the escrow agent of the parties. Thereafter on January 23, 1950, an agreement was entered into between the parties entitled "Cancellation of Contract of Sale and Escrow Agreement", which agreement, after reciting a consideration of "One and no/100 and other valuable consideration in hand paid" by each of the parties to each other, provided as follows:

"It is understood and agreed that the parties have made other and different arrangements, and

have entered into a separate and distinct contract regarding the sale of said lands by the First Parties to the Second Parties, which agreement is not herein set forth and has not been revealed to the scrivener hereof. It is further understood and agreed by all parties that the said Contract of Sale and Escrow Agreement, above mentioned, is hereby terminated, cancelled and rendered for naught, and that the same is null and void and of no effect after the execution hereof, and that the rights of the parties are hereafter to be determined by their separate, new and different contract and agreement. It is further understood and agreed that the said United States National Bank of Portland, Ontario Branch, at Ontario, Oregon is hereby instructed, requested and directed to return the deed and abstract now by it held in escrow to the First Parties, and the Bank will thereupon be and hereby is forever released and discharged of any and all further obligation or liability whatsoever to the parties hereto, and the parties hereby agree that they will forthwith pay to said bank, prior to delivery of said instruments to the First Parties, all sums due and owing to said bank for its services as escrow."

On March 1, 1950, the plaintiff Charles E. Share, and the defendant, H. H. Williams, entered into a lease for a period of one year for the premises in controversy, providing a crop rental as consideration for the use of the land. On October 17, 1950, the defendants executed an instrument entitled "Waiver", which read as follows:

"WHEREAS Chas. E. Share and Cora E. Share, husband and wife, are negotiating with Robt. E. Lees, of Ontario, Oregon, for a mortgage loan upon the following described real property and premises, to-wit:

"The Lot 1 (NW¼ NW¼) and the E½ NW¼ and approximately 3 acres in the SW¼ NE¼ of Section 18, Twp. 20 S, R. 46 E.W.M., in Malheur County, Oregon, containing approximately 127.69 acres.

"AND:

"WHEREAS said Robt. E. Lees has refused to make such loan without first obtaining the waiver hereinafter set forth, NOW, THEREFORE,

"IN CONSIDERATION OF THE PREMISES We, H. H. Williams, a single man, and Edith Williams, a single woman (we being brother and sister), do hereby covenant and agree to and with said Robt. E. Lees, his heirs and assigns, that in the event said Robt. E. Lees makes the aforesaid mortgage loan to said Chas. E. Share and Cora E. Share any right, title, interest, claim, lien or equity we or either of us may have, or claim to have, in or to the above described real property, or any portion thereof, shall be subsequent, inferior and secondary in both time and right to the lien of such mortgage, and we and each of us do hereby waive any such right, title, interest, claim, lien or equity in favor of such mortgage and mortgagee, and consent that such mortgage shall be a first, prior and existing lien upon the whole of said above described real property, and also the grazing rights appurtenant thereto."

It is the contention of the defendants that there was no default in the contract of purchase between the parties prior to January 23, 1950, upon which date the document entitled "Cancellation of Contract of Sale and Escrow Agreement" was executed by the parties; that while the purchase contract was in full force and effect the cancellation agreement was executed by the parties for the purpose of assisting the plaintiff in procuring a mortgage loan upon the real estate, and that the parties had agreed that the defendants would continue in possession of the premises in the guise and status of tenants for such length of time as might be necessary for the plaintiff to secure the mortgage loan upon the premises, not exceeding two years, and that thereafter defendants would be reinstated under the purchase agreement; that there

was no other consideration for the execution of the "Cancellation of Contract of Sale and Escrow Agreement".

Defendants, after alleging the necessity of an adjustment of rights between the parties by reason of the sale of certain grazing rights made by the plaintiff, alleged that fraud had been practiced by the plaintiff in obtaining the execution of the cancellation agreement, a failure of consideration, and asked that the original contract be decreed to be in full force and effect, and that defendants be permitted to comply with the terms thereof.

The plaintiff denied the contentions of the defendants. His testimony is to the effect that the defendants came to him in December, 1949, just prior to the due date of the payment to be made on January 1, 1950, and stated they would not have the money to make the payment when it became due, but it is clear plaintiff made no attempt to declare a default of the defendants under his option in the contract. Plaintiff's explanation of the understanding of the parties is as follows:

"A It was in the way of an alternative, I'll say, demanding possession of the property, in which I told them that if they would release the sale contract I would lease them the ranch. The situation as it was was placing me in a position that I just couldn't carry on with it, and they should have possession of the ranch under a lease. There was considerable conversation between Mr. Williams and I as to his ability to farm the ranch. He told me that he could, and that the money that he would make for me as a landowner under a regular lease, that is, you know, from tenant to landowner, that the money he would make for me under that kind of a setup would amount to more than the payments would have under the original sales contract. I didn't expect that, but I told him that was fine, if he did that he could have the place then for two

years. He wanted to know if he could buy the place at the expiration of the two years providing he was there that long, and I told him he could.

"THE COURT: Pardon me. Did you say you told him he could or he could not?

"THE WITNESS: That he could.

"MR. SCHROEDER: Q So the original deal was that he was to have the lease for one year and if he could make as much money as he thought he could make you he could have it another year, is that it?

"A Provided he took care of the ranch in a good farmer-like condition.

"Q At the end of that time you would talk sale with him?

"A Yes, sir; that's right."

Plaintiff further stated he at no time told defendant, H. H. Williams, that they were continuing in effect the original contract of purchase and sale as executed by the parties, and he further testified as follows:

"Q Now, when you considered the possibility of any re-sale to Mr. Williams, or an ultimate sale to Mr. Williams, did you have in mind the same terms and the same price?

"A No, sir.

"Q You intended to raise the price if you sold to him, didn't you?

"A There was no way of telling.

"Q What did you have in mind?

"A Nothing at all as to price.

"Q Nothing at all as to price?

"A No, sir.

"Q But you did tell Mr. Williams that there was a possibility, if he performed satisfactorily, that you would consider selling the place back to him?

"A That's right."

The testimony of the defendants generally supported the allegations of their pleadings relative to

the making of an oral agreement that the terms of the original contract of purchase and sale were to be continued with the exception of deferment of the time of payment and the privilege of the plaintiff obtaining a loan thereon.

■ The "Cancellation of Contract and Escrow Agreement", after providing for a nominal consideration, made the following recital of fact:

"It is understood and agreed that the parties * * * have entered into a separate and distinct contract regarding the sale ·of said lands by the First Parties to the Second Parties, * * * and that the rights of the parties are hereafter to be determined by their separate, new and different contract and agreement * * *."

The plaintiff's statement, that the scrivener had no authority to place the foregoing recital in the contract, is an assertion without force as his signing thereof in the absence of a showing of actual fraud upon him is binding. *Kight v. Orchard-Hays et al.*, 128 Or 668, 275 P 682; 3 Williston on Contracts, Rev ed, 1737, § 606.

■■ It seems clear to us, considering the relationship of the parties and the facts in evidence, that the import of the recital in the cancellation contract is that the plaintiff and the defendants had entered into a new agreement. The trial court, however, in effect, in its decree found that the agreement made in the contract of cancellation was in accordance with the evidence offered by the plaintiff, and we have found nothing in the record which persuades us that this finding of the trial court should not be followed. It requires no citation of authority that an oral agreement of parties looking to an eventual sale and purchase of real property is unenforcible unless the evidence is such that it raises an estoppel in pais to dispute the oral contract of sale and purchase void

under the statute of frauds. The agreement of the plaintiff was to do something in the future, based upon the contingency that the defendants carried on a satisfactory operation upon the land. Such representations do not constitute fraud. 23 Am Jur 799, Fraud and Deceit, § 38. We find nothing in the evidence that would indicate that prior to or at the time of the execution of the mutual agreement the plaintiff in anywise intended not to offer to sell the premises at some future time to the defendants.

There is, however, another situation in this case which deserves the attention of this court. There can be no question that at the time of the execution of the cancellation agreement the defendants were not in default. The evidence clearly shows that the terms of the contract of purchase and sale as originally entered into were not insisted upon by the plaintiff. The entire course of the plaintiff's actions leading to the cancellation agreement, and as testified to by him, was one of indulgence towards the defendants. The fact that the plaintiff entered into a contract of cancellation is consistent only with his regarding the original contract as then still subsisting. *Johnson et al. v. Berns et al.*, 111 Or 165, 209 P 94, 224 P 624, 225 P 727.

The defendants had paid a substantial sum of money under the terms of the original contract of purchase and sale entered into between the parties. They had paid $6,000 of the total purchase price of $14,800. The agreement for a mutual rescission makes no reference whatsoever as to the placing of the parties in statu quo.

It is the contention of the plaintiff that the instrument entered into was nothing more than a cancellation agreement, each party agreeing to terminate the contract as of the date of the cancellation agreement, with

each party to retain the benefits or disabilities had in accordance with the terms of the contract. The plaintiff relies upon the case of *Harman v. Franks,* 178 Okla 560, 63 P2d 54, 58, where the purchasers were woefully in default. The facts in that case are entirely different from the facts in the case before us, the court there saying on page 564:

"In other words, as the evidence appears to us, Mr. and Mrs. Harman in effect agree to forget everything connected with the contract of sale, and as a complete substitution therefor go into the sheep raising business with Franks because of their inability to carry out the terms of the contract of sale, and to prevent foreclosure of the same and the probable resultant judgments against them."

The defendants in the present case were not woefully in default, and there was no threat of foreclosure indicated.

In the case of *Johnson v. Feskens,* 146 Or 657, 661, 31 P 2d 667, it is stated:

"The right to declare a forfeiture is derived from the stipulations of the parties and if parties under no disabilities choose to contract for a forfeiture a court of equity can afford no relief against the forfeiture in the absence of some fraud or improper practice upon the part of the person seeking to impose the forfeiture: 2 Warvelle on Vendors (2d Ed.), section 807. But notwithstanding this, forfeitures are regarded by the courts as a harsh way of terminating contracts and where a party insists upon a forfeiture he must establish his right by clear and convincing proof."

There is no instrument before us in this case which would permit the plaintiff to retain the payment made on the purchase of the lands, unless it be said the plaintiff is relying upon the terms of the original contract of purchase and sale, which provided for the payment of the money and a means of

declaring forfeiture thereof. Such a position is untenable for if the agreement of rescission is ineffective to cancel the original contract of sale, then the original contract of sale and purchase is still in full force and effect as contended by the defendants.

█ It seems clear to us from the actions of the parties and the recitals in the agreement that the parties were mutually abandoning all rights under the contract. Having both consented to this recission, neither can base any claim thereon except such rights as each may have to the restoration of status quo. *Johnson v. Feskens,* supra.

 Since the time of the case of *Frink v. Thomas,* 20 Or 265, 25 P 717, it has been the rule of this jurisdiction "that when the parties voluntarily agree to rescind a contract, there being no express stipulation with reference to payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same". *Mascall v. Erikson,* 131 Or 509, 516, 283 P 2. Also "a rescission contemplates not only the destruction of the contract, but also the restoration of the parties to their former estate or situation". *Miles v. Hemenway,* 59 Or 318, 111 P 696, 117 P 273. There being no provisions made in the contract of cancellation, and it being admitted that the parties were not placed in statu quo, the defendants are entitled to the return of their payment of $6,000, with interest at 6% per annum from the date of payment, less the reasonable rental of the premises from February 21, 1949, to January 23, 1950, the time in which the defendants occupied the premises under the contract of sale to the date of its mutual rescission, the parties having agreed on crop rentals subsequent to that time.

■ It needs no citation of authority that an action for money had and received, which is the right of action held by the defendants against the plaintiff for the recovery of their payment, cannot be set up as a defense to the possessory action of forcible entry and detainer brought by the plaintiff, and ordinarily this court could grant no relief to a defendant upon such an issue between the parties. However, in this case it appears from the record that the parties stipulated for the removal of the cause from the justice court to the circuit court. We do not have that stipulation before us, but since the trial court considered the matter of placing the parties in statu quo, we may assume that the stipulation for removal was not only for the purpose of determining the right of possession, but also for fully determining the equities between the parties, and for us to remit this cause as presented without full determination would result only in a multiplicity of suits. Therefore, this court feels at liberty in this case to settle and determine this matter between the parties as fully as possible.

That portion of the decree of the trial court granting the immediate restitution of the possession of the real property to the plaintiff is affirmed, and, in accordance with this opinion, the cause is remanded to the trial court for the purpose of determining the amount of the reasonable rental for the use of the premises by the defendants to be deducted from the $6,000, with interest, and a judgment for the balance thereof entered in favor of the defendants and against the plaintiff.

The decree of the trial court is affirmed in part and remanded for further proceedings not inconsistent with this opinion.

Neither party shall recover costs in this court.

On Rehearing

*P. J. Gallagher,* argued the cause for appellants.

*W. F. Schroeder,* of Vale, argued the cause for respondent.

Before WARNER, Chief Justice, and TOOZE, ROSS-MAN, LUSK and PERRY, Justices.

PERRY, J.

After the rendition of our original opinion the plaintiff petitioned for a rehearing, setting forth his belief that the court erred in the following particulars: (1) in assuming equitable jurisdiction to award legal relief to the defendants; and (2) in ordering restitution of the purchase price paid by the defendants to the plaintiff under the original contract of purchase, the court did not permit the plaintiff his right of offset for the value of the use of the real property by the defendants, and also the court erred in allowing interest from the date upon which the $6,000 was paid to the plaintiff.

In our original opinion we stated:

"It needs no citation of authority that an action for money had and received, which is the right of action held by the defendants against the plaintiff for the recovery of their payment, cannot be set up as a defense to the possessory action of forcible entry and detainer brought by the plaintiff, and ordinarily this court could grant no relief to a defendant upon such an issue between the parties. However, in this case it appears from the record that the parties stipulated for the removal of the cause from the justice court to the circuit court. We do not have that stitpulation before us, but since the trial court considered the matter of placing the parties in statu quo, we may assume that the stipulation for removal was not only for the purpose of determining the right of possession, but also for fully determining the equities between the parties, and for us to remit this cause as presented without full determination would result only in a multiplicity of suits. Therefore, this court feels at liberty in this case to settle and determine this matter between the parties as fully as possible."

It appears from this stipulation (which is now before the court on a motion for diminution of the record) that the stipulation does not provide, as between the parties, that the court should settle and determine all of the equities arising between the parties concerning the title to the real property in issue.

Since our assumption as to the contents of the stipulation was in error, the question is then posed—was this court in error in ordering a restitution of the purchase money?

The plaintiff commenced his action in forcible entry and detainer in the justice court of Malheur county, Nyssa district, alleging the defendants' forcible withholding of possession of the property. The defendants answered, generally denying the plaintiff's complaint, and setting up as a further defense that on February 21, 1949, the defendants and the plaintiff had ''entered into a contract of sale of the lands described in the complaint'', and that the defendants ''paid on account thereof the sum of $6,000.00''; that thereafter this original contract of sale was cancelled in consideration of the plaintiff entering into a new contract of sale concerning these lands. In reply, the plaintiff admitted the contract of purchase, admitted the cancellation of the original contract of sale, but denied that the consideration for the cancellation of the contract of sale was the execution of a new contract; and alleged that the sole consideration was the sum of $1, the forgiveness of the defaulted payments, and other valuable consideration in hand paid by Charles E. Share and Cora E. Share to the defendants.

Upon the issues as they were then made up, trial was had before a jury in the justice court which resulted in a hung jury; thereafter by stipulation the matter was removed to the circuit court of the state of

Oregon for Malheur county, and was tried in that court without a jury.

In the circuit court the defendants filed an amended answer generally denying the allegations of the plaintiff's complaint and asking for affirmative relief; they alleged that the purported cancellation agreement as to the original contract of sale and purchase was solely for the purpose of the plaintiff procuring a mortgage loan upon the real property and not as a full and complete cancellation of the original contract, and that during the period of time necessary to obtain the mortgage loan the defendants would continue in possession of the premises in the guise of tenants, although in fact the relationship of vendor and purchaser still existed between the parties, and that during this period of time in lieu of the payments to be made upon the purchase contract, the defendants would deliver to the plaintiff a share of the crops produced on the land. The defendants further alleged that it was in reliance upon the promise of the plaintiff to continue the original contract of purchase that the cancellation of the original agreement and the lease was executed; and further, as a separate affirmative matter, the defendants alleged that the cancellation agreement and the lease were obtained by fraud in that the plaintiff had no intention of carrying out his agreement to reinstate the contract after the mortgage was obtained at the time of the execution of the release; and his repudiation "results in a fraud on defendants in their loss of the payments made on the said purchase contract". The defendants requested that all of their rights under the original contract and the amount, if any, still due upon the contract be determined, and that a reasonable time be fixed within which the defendants might make the payments, and for such other relief as was just and equitable in the premises.

In reply to the amended answer, the plaintiff admitted the execution of the original contract of purchase as set out and the execution of the claimed cancellation agreement, but denied that the cancellation agreement was other than a full and complete cancellation agreement, and alleged that defendants were estopped by their execution of the lease agreement to claim that the relationship of vendor and purchaser existed.

The trial court, after hearing the issues, decreed that "the plaintiff is the owner of the lands and premises described * * * and is such owner free and clear of any right, interest, claim or estate of or in the defendants or either of them, and entitled to the immediate possession thereof. That the plaintiff recover from the defendants, H. H. Williams and Edith Williams, the possession of the said lands and premises last above described, and that a Writ of Restitution issue therefor; and that neither party shall have costs or disbursements in this cause".

A search of the record discloses that the plaintiff did not request a jury trial after the conclusion of the equity suit, and no decree was entered by the trial court dismissing the equity proceedings. It is clear that the parties and the trial court treated the matter throughout as a suit in equity, the trial court decreeing the plaintiff to be the owner of the land "free and clear of any right, interest, claim or estate" of the defendants, and awarding neither party costs or disbursements.

No judgment at law was ever entered in this cause. The appeal is solely from a determination of the equitable issues presented.

In the case of *Gellert v. Bank of California, National Association*, 107 Or 162, 214 P 377, a carefully

considered opinion by Mr. Justice HARRIS, this court stated:

"Now, as before the amendment of 1917, a party to secure a review of the decree, must appeal from it, and to secure a review of the judgment must likewise appeal from it; for an appeal from one will not operate as an appeal from the other, and an appeal from the judgment will not permit a review of the decree."

And Mr. Justice LUSK, in commenting upon the language of the above case, stated in *Pacific General Contractors, Inc., v. Slate Construction Company,* 196 Or 608, 618, 251 P2d 454, as follows:

"Of course, there being no decree, there was nothing, so far as concerns the equitable defense, from which the defendant could have appealed. The defendant, however, was not remediless. That it was the duty of the court to enter a decree in accordance with its decision of the equitable issues, is the manifest implication of the Gellert case and of Friedenthal v. Thompson, 146 Or 640, 646, 647, 31 P2d 643, where it is said:

" 'It would appear that, where the defendant asserts an equitable defense and the parties stipulate that the court may hear the whole matter without the intervention of a jury, the court may and should dispose of the entire case in the equitable proceeding: Crossen v. Campbell, supra. However, where the court finds against the defendant on the equitable defense, a decree may be entered accordingly and the case be allowed to proceed at law.' "

As we have stated, the trial court did not follow the procedure of either the Gellert case or the Friedenthal case, cited in the opinion of Mr. Justice LUSK, but, with the acquiescence and consent of the plaintiff, from which no appeal was taken, the trial court decreed "that the contract between plaintiff and defendants of February 21, 1949, for the sale of lands and premises hereinafter described, was mutually cancelled on the 23rd

day of January, 1950'', retained equitable jurisdiction, quieted title to the premises as against the defendants, and, as a court of equity alone may act, awarded costs to neither party.

In the case of *Friedenthal v. Thompson,* supra, this court held (p. 647):

"If, however, plaintiff in his reply sets up 'equitable matter' by alleging facts 'not inconsistent with the complaint' then 'such equitable relief as is proper may be given to either party': § 6-102, supra. [Oregon Code 1930]. When both plaintiff and defendant seek the aid of equity they thereby confer jurisdiction on the court to dispose of the entire case as in a suit in equity. In such case the court may use all the powers of a court of equity including injunctive relief to maintain or restore the status quo as was done in the instant cause."

And to the same effect is the case of *Crossen v. Campbell,* 102 Or 666, 202 P 745.

It is true that in each of the above cases a stipulation was filed by the parties in which they consented to the entire matter being determined by the court. But consent may be given in ways other than by stipulation, and we are of the opinion that the plaintiff consented to a full determination of all of the issues of the equitable and legal title to the premises by acquiescing in a decree that quieted the title as against the claims of the defendants. Likewise, equity, having assumed jurisdiction of the equitable defenses in this proceeding, should proceed to a full adjudication to avoid a multiplicity of suits. *Leathers et ux. v. Peterson,* 195 Or 62, 244 P2d 619.

ORS 16.460 (formerly § 9-102 OCLA), which provides for the interposing of equitable defenses in law actions, reads in part as follows:

"(2) * * * When such an equitable matter is interposed, the proceedings at law shall be

stayed and the case shall thereafter proceed, until the determination of the issues thus raised, as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are provided for in actions of law.''

Under the facts of this case this court was not in error in its adjustment of the equities between the parties.

In our original opinion we directed that a judgment be entered in the trial court in favor of the defendants for the sum of $6,000, with interest at 6 per cent per annum from the date of the execution of the contract, less a reasonable rental of the premises from the date of the execution of the contract to January 23, 1950. We allowed no rentals from that date since it was determined that from January 23, 1950, to February 1, 1951, the lease agreement between the parties was operative and that the parties had agreed to crop rentals during the period involved in this litigation, and which we understood had been fully satisfied in accordance with the agreement.

Since the reargument of this cause, we have been given to understand by the parties that the agreement was without prejudice to the rights of the parties to determine the reasonable rental value of the premises.

We are now modifying our previous opinion, and directing that the trial court determine as an offset against the judgment of restitution to the defendants the reasonable rental value of the real property while

the possession was held by the defendants under the contract of sale, and the period of time from February 1, 1951, until surrender of the possession of the property was made by the defendants, and that the trial court may consider as an offset waste, if any, committed by the defendants while in possession of the real premises.

Except as herein modified, our former opinion is adhered to.

LUSK, J., dissenting in part.

The effect of filing an answer containing an equitable defense to an action at law is to stay the proceedings at law until the determination of the issues made by the equitable answer. If the proof sustains the equitable defense the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree. If, after determining the equities, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case and the court shall allow such pleadings in the law action as are provided for in actions at law. ORS 16.460. The fact that the trial is before the court without the intervention of a jury is immaterial on the question whether the case is one at law where the equitable defense fails. There is nothing to the contrary in *Friedenthal v. Thompson,* 146 Or 640, 646, 647, 31 P2d 643, cited by the majority. The dictum quoted from that case means merely that the court should dispose of the whole matter in the equitable proceeding where the equitable defense is sustained, but as we there said, "where the court finds against the defendant on the equitable defense, a decree may be entered accordingly and the case be allowed to proceed at law." Whether it proceeds before

a judge and jury or a judge alone does not determine the character of the proceeding.

Here the defendants in a forcible entry and detainer action filed a third amended answer setting up an equitable defense, the essence of which was that they were not holding the land as tenants but as purchasers under a vendor-purchaser contract. They alleged that a purported cancellation of that contract had been obtained by fraud, and that for this and other reasons the contract was still in effect, and prayed for equitable relief with respect to their rights under the contract. By way of reply to this pleading the plaintiff denied its material allegations and set up an estoppel based on facts not necessary to be stated here. The reply concludes: "Wherefore, plaintiff, having fully replied to the third amended answer of the defendants, renews the prayer of his complaint." The prayer of the complaint was the usual prayer in an action in forcible entry and detainer, that is to say, "for judgment against the defendants for the restitution of said premises." The plaintiff asked for no equitable relief, and, indeed, alleged no facts which would have entitled him to equitable relief. The entire reply was framed to meet the allegations of fact set up in the answer which, in the defendants' view, constituted a defense and entitled them to the interposition of a court of equity. Hence, the statement from the Friedenthal case quoted in the opinion of the court, to the effect that when both plaintiff and defendant seek the aid of equity they thereby confer jurisdiction on the court to dispose of the entire case as in a suit in equity, is without application here. The only relief sought by the plaintiff was recovery of possession of the premises in an action at law. The reply was purely defensive in its nature.

The court found against the defendants on the equi-

table issues, and entered detailed findings of fact. With the equitable defense thus disposed of there was nothing left to be determined except the issue of the right to possession of land in a forcible entry and detainer action. What the parties or the court may have thought as to whether they were still in equity or at law could not convert that kind of a case into a suit in equity. There was nothing of equitable cognizance left after the court found against the defendants on the equitable issue.

*Pacific General Contractors v. Slate Construction Co.,* 196 Or 608, 251 P2d 454, falls far short of supporting the court's position. That was an action for money had and received in which the defendant interposed an equitable defense. Upon completion of the evidence on the equitable issues the judge announced that he would hold against the defendant on such issues. Counsel for defendant sought to have a decree entered to that effect, but the court refused to enter such a decree and thereafter proceeded with the trial of the issues at law and entered findings and a judgment for the plaintiff. In that state of the record we held that we could not review the questions raised by the equitable answer because no decree had been entered dismissing the equitable proceeding, and, of course, no appeal had been taken from such a decree. We called attention to the fact that entry of a decree dismissing the equitable defense could have been compelled by mandamus, but that the defendant had not resorted to that remedy. We therefore concluded that we could not consider assignments of error directed to the refusal of the court to enter a decree dismissing the equitable defense and to the court's "withdrawing the equitable defense."

The opinion of the court in the case at bar invokes this decision as authority for treating this case as a suit in equity and granting equitable relief to the de-

fendants, and says: "No judgment at law was ever entered in this cause. The appeal is solely from a determination of the equitable issues presented." A part of the so-called decree entered by the Circuit Court reads: "That the plaintiff recover from the defendants, H. H. Williams and Edith Williams, the possession of the said lands and premises last above described, and that a writ of restitution issue therefor." This is the form of judgment prescribed by the code in an action of forcible entry and detainer. ORS 105.145. The court proceeded to order that neither party should have costs or disbursements which would indicate that the court thought that the judgment was given in a proceeding in equity. But that was merely the mistake of the court. Insofar as the court also adjudged that the plaintiff was the owner of the land involved, free and clear of any right, interest, claim or estate of the defendants, it would appear that the court intended to enter a decree upon the issues made by the equitable answer. But that does not decide the question before us the way the court here decides it for the reason that, once a decree has been entered disposing of the equitable issues unfavorably to the defendant, the only order to be entered is a judgment at law. This is true even though, as in the Pacific General Contractors case, no decree formally dismissing the equitable defense has ever been entered, and neither the form which the judgment takes nor the name it is given can change its essential character.

As did the Circuit Court, we have held that the equitable defense failed. We have affirmed the portion of the so-called decree granting restitution of the real property to the plaintiff. What the court now does is to hold that in an action of forcible entry and detainer, where an equitable answer is interposed and fails, a counterclaim for money had and received may be al-

lowed, not because the equitable defense succeeded, but because it failed. This the court holds in a case in which the pleadings cannot possibly be stretched to include such an issue. That issue is the right of the defendants to recover $6,000, the initial payment under a contract for the purchase of land which the defendants alleged in their answer was still in full force and effect and constituted the foundation of their right to remain in possession of the land. It must be plain that under such a pleading the defendants did not raise the question of their right to recover the down payment, for that right could not arise unless the contract had been cancelled and the whole theory of the defense is that it was still in effect.

On the other hand, the reply was directed solely to the claim in the defendants' answer that the contract was still in effect, thereby presenting as the ultimate question: Must plaintiff's action at law be perpetually enjoined because of the facts alleged in the answer? When we decide, as we do, that it should not be enjoined because the equitable defense has not been sustained, nothing is left except an ordinary forcible entry and detainer action. I still adhere to the statement in our former opinion that an action for money had and received cannot be set up as a defense (or, I would add, as a counterclaim) to the possessory action of forcible entry and detainer. And such a cause of action certainly cannot be adjudicated when it is not even in issue. The court now holds, and properly so, that the stipulation transferring the cause from the justice's court to the Circuit Court did not authorize the latter to determine all the equities between the parties. I can find no other stipulation to that effect, either express or implied.

I know of no statute, nor of any precedent construing our statutes, which is authority for the procedure

which the court now inaugurates. Certainly, the court has cited no case which supports this novel decision. It may be laudable to attempt to avoid a multiplicity of suits, but it is not permissible to do so at the expense of settled principles of procedure. I would modify our former opinion by affirming that portion of the decree of the Circuit Court which grants to the plaintiff judgment of restitution, without prejudice to the right of the defendants to bring an action for the recovery of the sum of $6,000 paid to the plaintiff at the time of the execution of the contract of sale.

WARNER, C. J., joins in the foregoing dissent.