Argued June 3, affirmed November 5, 1971

SCHLEGEL ᴇᴛ ᴜx, *Respondents, v.* DORAN,
*Appellant.*

490 P2d 163

*George R. Waldum,* Portland, argued the cause and filed briefs for appellant.

*J. W. Darr,* Hillsboro, argued the cause and filed a brief for respondents.

HOLMAN, J.

This was an action to recover an amount equal to the real property taxes assessed on a Washington

county car washing business. The business had been sold by plaintiffs to defendant and was later retaken by plaintiffs. The taxes in question accrued during the period defendant was in possession of the business. Defendant filed a counterclaim, contending the parties had mutually rescinded the contract of sale and seeking recovery of payments made on the contract less reasonable rent during the period of defendant's occupancy.

After a trial without a jury, the court entered a judgment for plaintiffs for the amount of the taxes and denied defendant's counterclaim.

The purchase price of the car washing business sold by plaintiffs to defendant was $90,000. Defendant paid a little over $33,000 on the principal, plus interest. He failed to make the February, 1968, payment. Thereafter, he remained one month in arrears until September 24, 1968, when plaintiffs' attorney wrote him a letter, advising him it would be necessary that the payments be immediately made current and that future payments must be made at the time provided by the contract. Defendant's lawyer responded on September 30, stating that the business had not earned sufficient income to make the double payment required, and asked for consideration.

Thereafter, the litigants conferred without the aid of their lawyers and, on October 12, defendant's lawyer wrote to plaintiffs' lawyer, as follows:

"Richard Doran has talked to Mr. Schlegel and has offered to return the Car Wash to Schlegel provided that Mr. Doran has no further liability.

"Would you prepare the appropriate papers?"

Defendant did not make the monthly payment due October 1. On October 14, the parties, together with

plaintiffs' attorney and accountant, met at the place of business, and defendant turned over the keys to the business to plaintiffs. Thereafter, plaintiffs' attorney sent certain documents to defendant's attorney for defendant's execution. Defendant did not execute these documents, but returned to plaintiffs a quitclaim deed containing the following:

> "This conveyance is made by grantor to grantees in lieu of foreclosure by grantees of that certain contract of sale dated May 20, 1965, and it is the intent of grantor to reconvey to grantees all of grantor's right, title and interest of every kind and nature arising from said contract of sale.

> "The consideration for this conveyance, in terms of dollars, is none insofar as the total consideration is the forebearance [sic] by grantees to foreclose the contract mentioned above."

Subsequently, plaintiffs discovered that the taxes accruing during defendant's possession had not been paid by defendant and plaintiffs commenced this action to recover the amount of such taxes, claiming that defendant had orally agreed to pay all outstanding taxes of the business as of October 14, the date defendant turned the business back to plaintiffs. Defendant denied any such agreement and counterclaimed for the amount of the payments he had made upon the business less reasonable rent, contending the parties had mutually agreed to rescind the contract.

Two issues were raised by the pleadings: 1) whether there was a redelivery of the business in lieu of foreclosure or whether the parties had "mutually agreed to rescind the contract," and 2) whether the parties had agreed, upon redelivery, that defendant would pay the taxes for the period of time he occupied the business.

■ Defendant's first assignment of error is the failure of the trial court to give defendant a jury trial. He wrote the trial judge, requesting a jury trial and giving him authorities to the effect that defendant's counterclaim was an action at law and not a suit in equity. At the commencement of the trial, he stated:

> "* * * [I]t is the defendant's position, as far as procedure that we did want a Jury trial on our counterclaim of money had and received * * *."

It is clear that defendant was entitled to a jury trial on his counterclaim. The essence of the counterclaim is that defendant is entitled to the amount prayed for as a consequence of an agreement mutually rescinding the contract for the purchase and sale of the car wash. Accordingly, it would appear that this case is controlled by *Share v. Williams et ux,* 204 Or 664, 277 P2d 775, 285 P2d 523 (1955), wherein this court stated:

> "Since the time of the case of *Frink v. Thomas,* 20 Or 265, 25 P 717, it has been the rule of this jurisdiction 'that when the parties voluntarily agree to rescind a contract, there being no express stipulation with reference to payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same.' * * *." 204 Or at 675.

The court went on to characterize this action as one for money had and received. *Share, supra,* at 676. Such an action, although governed by equitable principles, is an action at law. *Hogan v. Alum. Lock Shingle Corp.,* 214 Or 218, 225, 329 P2d 271 (1958). Thus, the parties have a right to a trial by jury. Since defendant did not waive this right, the court erred in denying his request for a jury trial.

Defendant was not prejudiced, however, as a result of the court's failure to give him a jury trial. We hold that the state of the evidence is such that defendant did not make out a case on his counterclaim sufficient to submit to a jury. The deed which was drawn by defendant's lawyer clearly sets out that the transfer was in lieu of foreclosure and therefore could not have been the result of an agreement for a mutual rescission.

Defendant claims that plaintiffs had waived the "time is of the essence" provision of the contract by the acceptance of late payments and that they wrongfully declared a forfeiture without giving defendant adequate notice and opportunity to become current in his payments. He contends he was entitled to treat the forfeiture as a repudiation of the contract and that he so elected and gave the business back to plaintiffs. His position is not well taken. In the first place, he alleges in his counterclaim only that the parties mutually agreed to rescind; and, in the second place, despite his testimony that there was no such agreement, the deed transferring the business back to plaintiffs specifies the transfer was in lieu of foreclosure, and defendant has shown no reason why he should not be bound thereby.

■ A transfer "in lieu of foreclosure" can mean only that the parties contemplated their respective positions after the transfer would be the same as if the foreclosure had been had. This intention is further bolstered, if necessary, by the recital that the consideration for the retransfer of the property is the forbearance to foreclose.

■ Our present holding, that defendant is not now entitled to a jury trial because he did not make out

a case when he was forced to submit the matter to the court, is contrary to a holding of this court in *Lang v. Hill*, 226 Or 371, 378-79, 360 P2d 316 (1961). We believe that efficient judicial administration requires the matter not be sent back for a jury trial when defendant did not make out a case justifying the relief he requested.

Defendant apparently submitted the controversy to the court without objection concerning whether there was an agreement by defendant to pay the delinquent taxes, although it clearly was an action brought on an alleged oral contract. His attorney's letter to the judge and the statement of defendant's lawyer to the court can be construed only as requesting a jury trial on defendant's counterclaim. The provisions of ORS 17.035 provide as follows:

"Trial by jury may be waived by the several parties to an issue of fact, in actions on contract, and with the assent of the court in other actions, in the manner following:

"(1) By failing to appear at the trial.

"(2) By written consent, in person or by attorney, filed with the clerk.

"(3) By oral consent in open court, entered in the minutes."

The following cases have adjudicated the statute to be exclusive: *In Re McCormick's Estate*, 72 Or 608, 611, 623, 143 P 915, 144 P 425 (1914); *Puffer v. American Insurance Co.*, 48 Or 475, 478, 87 P 523 (1906); *Wilkes v. Cornelius*, 21 Or 341, 345, 23 P 473 (1890). However, we have subsequently held in numerous cases that where a matter of equitable cognizance is pleaded but there is a failure of proof establishing an equitable right, and the parties thereafter submit the legal issues to the court without objection, a jury is

waived. *Olson v. Roop,* 255 Or 368, 370-71, 467 P2d 437 (1970); *Winkleman v. Ore.-Wash. Plywood Co.,* 240 Or 1, 10, 399 P2d 402 (1965). The same rule has also been applied where plaintiff's complaint has been amended during plaintiff's case in chief to state a legal issue rather than an equitable one. *Trans. Equip. Rent v. Ore. Auto. Ins.,* 257 Or 288, 478 P2d 620 (1970).

In *Argonaut Insurance Co. v. Ketchen,* 243 Or 376, 380-81, 413 P2d 613, 19 ALR3d 1386 (1966), after setting out the statute and the cases above cited for the proposition that the statutory provisions were the exclusive ways in which a jury trial could be waived, we stated as follows:

> "While we are not prepared to say that in a proper case we would not want to re-examine the rule laid down by these cases, there is no necessity for it here. No factual issues had been presented to the trial court prior to plaintiff's request for a jury. No inconvenience or disability would have been incurred had a jury been empaneled at the commencement of the second court session when it became apparent that it would be necessary to decide the factual question of Mrs. Reed's status." 243 Or at 381.

We believe that a party should not be able to insist upon a jury trial after a law case has been submitted to the court without objection and the court has decided it adversely. There is no legitimate reason for giving a party two bites at the apple. One is enough. The protection of the constitutional right of trial by jury does not necessitate a different rule, and we believe that the statute was not intended to cover situations where a case is submitted to the court without objection and a decision is made. A party should be estopped by such conduct from asserting on appeal

his statutory and constitutional rights. *See Kearney v. Case,* 79 US (12 Wall.) 275, 284, 20 L Ed 395 (1870) for a similar construction of a statute requiring the filing of a written stipulation waiving a jury.

5. Defendant also claims the evidence was insufficient to prove the oral contract requiring him to pay the taxes during the period of time he was in possession of the business. One of the plaintiffs testified that defendant so promised, and this was sufficient evidence to take that part of the case to the trier of the facts. In fact, defendant admitted he agreed to pay all outstanding debts against the business as of October 14, when he returned the business to plaintiffs. There was unquestionably sufficient evidence to pose a question of fact.

The judgment of the trial court is affirmed.

McALLISTER, J., dissenting.

The majority holds, and I agree, that defendant was entitled to a jury trial on his counterclaim. I do not agree that defendant was not prejudiced by the denial of a jury trial. In my opinion, the evidence raised a question of fact which should have been determined by a jury.

The majority relies on the recitals in the quitclaim deed as conclusive evidence that the parties agreed that plaintiffs should retain the payments which had been made on the contract. Undisputed testimony of the plaintiff Irwin Schlegel, however, indicates that there was no such agreement. Mr. Schlegel testified:

"Q There was no discussion on October 14th, or prior that [sic], as to the return of payments to Mr. Doran, was there?

"A No, sir.

"Q  At no time was that ever discussed?

"A  No, sir."

Defendant testified:

"Q  Was anything said to Mr. Schlegel at all about the repayment of any money?

"A  No.

"Q  At any time?

"A  No."

During oral argument before this court, plaintiffs' attorney conceded that the record showed no explicit agreement between the parties about the return or retention of the payments.

Although plaintiffs rely on the deed as some evidence of their version of the agreement, they contend that the agreement itself was an oral one, thus recognizing that the terms of that agreement are a question of fact.

In his counterclaim, defendant alleged that the parties mutually agreed to rescind the original contract. On appeal, he has argued that the evidence shows a rescission by conduct of the parties, but he has not abandoned his original theory of a termination by mutual agreement. He argued to the court that the two theories were alternatives. In my opinion, the evidence would permit a finding in accord with the allegations of the counterclaim—that the parties simply agreed to terminate their contract.

On September 24, 1968, when payments on the contract had for some time been one month in arrears, plaintiffs' attorney wrote to defendant demanding prompt payment of the delinquent instalment and timely payment of future instalments. The letter threatened defendant with foreclosure proceedings if this was not done.

Some time in September, Mr. Schlegel telephoned defendant to discuss taking the business back. He testified:

"Q  Whose idea was it that the business be taken back?

"A  Mine.

"Q  Did you approach Mr. Doran about this then?

"A  Yes.

"Q  If he couldn't make the payments that you would have to take the business back?

"A  On the telephone conversation, yes."

Defendant testified as to this same conversation:

"Mr. Schlegel wanted the payment for February and also the October payment and I told him that I wasn't in a position to make the payment, so he said he wanted the car wash back. So, we agreed to meet there for the purpose of turning back the keys to him.

*  *  *  *  *

"Q  Mr. Doran, in September you talked to Mr. Schlegel on the phone, and at that time it was decided that you would turn the business back over to him?

"A  Yes.

"Q  What was your reason for wanting to do this?

"A  Well, I didn't call him. He called me. I didn't want to. He wanted the money and I didn't have it.

"Q  You couldn't make the payments?

"A  Yes.

"Q  So you agreed to turn it back over to him?

"A  I agreed to go out there and give him the keys and let him take possession, yes."

On October 12, defendant's attorney wrote to plaintiffs' attorney:

> "Richard Doran has talked to Mr. Schlegel and has offered to return the Car Wash to Schlegel provided that Mr. Doran has no further liability.
>
> "Would you prepare the appropriate papers?"

On October 14, the parties met at the car wash; at that time the keys were returned to plaintiffs and various matters were discussed. Mr. Schlegel testified:

> "We agreed that if everything was paid up which he contended that it was and promised that it was and would be, that we would take the business back without any foreclosure proceedings."

Plaintiffs' attorney, who was present during that conversation, testified:

> "We went over with him the fact that we were cutting everything off as of that date. All bills were to be paid by him to that date and Mr. Schlegel would take everything back as of that date. There would be no further responsibility under the contract or liability to Mr. Doran. Mr. Schlegel was giving up his right to foreclose and take a judgment or take back the security. This was agreeable."

As I have previously pointed out, everyone agrees that at no time was there any discussion about defendant's payments being returned to him or about the retention of those payments by the plaintiffs.

In *Share v. Williams*, 204 Or 664, 675, 277 P2d 775, 285 P2d 523 (1955), we said:

> "Since the time of the case of *Frink v. Thomas*, 20 Or 265, 25 P 717, it has been the rule of this jurisdiction 'that when the parties voluntarily agree to rescind a contract, there being no express stipulation with reference to payment or payments

already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same'. *Mascall v. Erikson*, 131 Or 509, 516, 283 P 2. * * *"

In *Share,* the parties had entered into a written agreement canceling their contract, which agreement provided that the contract

"'* * * is hereby terminated, cancelled and rendered for naught, and that the same is null and void and of no effect after the execution hereof, * * *.'" 204 Or at 668.

Of this agreement the court said:

"It seems clear to us from the actions of the parties and the recitals in the agreement that the parties were mutually abandoning all rights under the contract. Having both consented to this recission [sic], neither can base any claim thereon except such rights as each may have to the restoration of status quo. * * *" 204 Or at 675.

In *Mascall v. Erikson,* 131 Or 509, 283 P 2 (1930), quoted in *Share v. Williams,* supra, the purchaser became unable to make payments on a land sale contract. By agreement between the parties, the possession was restored to the vendor. The details of that agreement do not appear, the opinion stating:

"It conclusively appears from the evidence that, upon the failure of the purchaser to continue his payments under the contract, the vendors and purchaser mutually agreed that the property should be received by the vendors and that the purchaser should relinquish all interest therein. We find from the evidence that the contract was to this extent rescinded and abandoned, without any oral agreement made in regard to the payments which had

been made upon the purchase price by plaintiff. * * *" 131 Or at 513.

The court held that the purchaser was entitled to recover the payments he had made, less a reasonable rental and damages to the land while he was in possession. 131 Or at 516-517.

In the present case I think the evidence set out above could reasonably be interpreted as establishing an agreement to abandon the contract—that plaintiffs were to take back the business and defendant was to have no further obligations. Under the doctrine of *Share v. Williams* and *Mascall v. Erikson,* supra, in the absence of any agreement about the payments already made, defendant would then be entitled to the return of the amounts he had paid, less a reasonable rental for the period he was in possession of the business.

The recitals in the quitclaim deed are, of course, some evidence of an understanding that plaintiffs were to retain the payments made under the contract. They are not, however, conclusive evidence of such an understanding. The majority relies heavily on the recital that the deed was given "in lieu of foreclosure." I have found no cases construing this language in a deed, and we have no reason to believe that the term is one of art which carries with it the idea that the parties are to be put in the same position as though plaintiffs had foreclosed upon the contract. "In lieu of" means "instead of," "in place of," or "in substitution for." See, e.g., *City of Mesa v. Killingsworth,* 96 Ariz 290, 394 P2d 410, 414 (1964); *Burpee v. Logan,* 216 Ga 434, 117 SE2d 339, 342 (1960); *Reed v. Albanese,* 78 Ill App 2d 53, 223 NE2d 419, 423 (1966); *Glassman Construction Co. v. Baltimore Brick Co.,* 246

Md 478, 228 A2d 472, 474 (1967). There is no suggestion in the cases construing these words, in their dictionary definitions, or in common usage, that they necessarily mean an equivalent or something accomplishing the same result. The trier of fact was entitled to consider the effect of the deed recital in light of the other evidence in determining what the parties' agreement was.

Because I think there was clearly an issue of fact involved in defendant's counterclaim, I would reverse and remand so that defendant can have the jury trial to which he is entitled.

TONGUE, J., joins in this dissent.

HOWELL, J., dissenting in part.

I dissent from that portion of the majority's opinion which holds that the trial court's failure to allow defendant a jury trial on his counterclaim was not prejudicial. The counterclaim constituted a cause of action for money had and received. As such, it was an action at law, and defendant was entitled to a jury trial as a matter of right. The error was committed at the time the trial court refused defendant's demand for a jury trial. In my opinion it is immaterial that defendant did not make out a case when he was forced to try the matter before the court. The defendant's right to a jury trial should be considered as of the time of the trial, not in the light of subsequent events. *See Lang v. Hill*, 226 Or 371, 360 P2d 316 (1961).