Argued and submitted May 23, reversed and remanded August 8, 1984

## ABRAHAM, dba Tom Abraham
## Mobile Homes Sales,
### *Appellant,*

*v.*

## KENDALL,
### *Respondent.*

(82-7-474; CA A29029)

686 P2d 428

Jean Fogarty, Portland, argued the cause for appellant. With her on the briefs were David J. Sweeney, and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

David H. Lohman, Portland, argued the cause for respondent. On the briefs were Richard B. Morrow, and Lindsay, Hart, Neil & Weigler, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff is in the business of selling mobile homes, and defendant is the owner of a mobile home park. Plaintiff alleges that defendant breached an oral agreement that was reached between plaintiff and defendant's agent, Richard Pleasant, the manager of the park.[1] Defendant moved for and the trial court granted summary judgment on the ground, *inter alia,* that the agreement is within the Statute of Frauds, ORS 41.580, and is therefore not actionable. We reverse.

In February, 1980, Pleasant rented plaintiff a space in the park on a month-to-month basis. Plaintiff intended to place a mobile home in the space, find a purchaser and sell the home for the purchaser's use as a permanent residence in the park. According to plaintiff, Pleasant agreed that defendant would obtain necessary action by Clackamas County to permit the space to be used as a permanent mobile home site.

Plaintiff's affidavit states:

"5. Your affiant placed this mobile home on said site for the sole purpose of resale. Thus, once the sale was consummated, said mobile home could be left on this site for permanent placement when the purchasers eventually were able to move in.

"6. Defendant and Richard Pleasant, the Park Manager, knew that this mobile home was placed on defendant's park so the mobile home could be eventually sold and that when the sale was consummated it could be left at this site for permanent placement when the purchasers would be able to move into it."

On January 15, 1981, plaintiff received a notice from the county that

"* * * the required inspections have not been requested. Subsequently, *[sic]* this installation *has not* been approved.

"Your continued cooperation in this matter is very much appreciated. Upon submission of your permits inspections can be requested at the same time." (Emphasis in original.)

Subsequently, on April 30, 1981, Pleasant filed an application with the county, co-signed by defendant, to permit the use of

---

[1] Pleasant died before this action was brought. The evidence pertaining to the oral agreement consists principally of plaintiff's affidavit and his deposition.

the space as a permanent mobile home site. The application was denied on June 11. Plaintiff sold the mobile home in September, 1981, and only then was informed by Pleasant that county approval had not been obtained and that the home would have to be moved to another space in the park. Plaintiff brought this action in July, 1982, seeking recovery of his rental payments and the cost of moving the mobile home to the alternate space.

Defendant argues that the oral agreement is unenforceable under ORS 41.580(1), (5) and (6).[2] Plaintiff argues that the contract consisted of two promises by Pleasant—the month-to-month lease and the procurement of county approval—and that neither of those promises is subject to ORS 41.580. Plaintiff explains that neither promise was, by its terms, to be performed within one year and, therefore, that neither was within ORS 41.580(1); that month-to-month tenancies are not subject to ORS 41.580(5), *see McDaniels v. Harrington*, 80 Or 628, 157 P 1068 (1916); that the promise to secure county approval was a contract for services rather than one pertaining to a real property interest and was therefore not within ORS 41.580(5); and that, for the same reason among others, Pleasant's promises did not concern real property and his authority did not have to be evidenced in writing pursuant to ORS 41.580(6).[3] Defendant responds:

> "The crux of the plaintiff's claim is the allegation that the defendant agreed to obtain a permit which would allow the *continued presence* of the mobile home on space 4A. Such an agreement by its terms involves an interest in land or the leasing of the space for a period longer than one year.

---

[2] Those subsections provide that the following oral agreements are void:

"(1) An agreement that by its terms is not to be performed within a year from the making.

"* * * * *

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein.

"(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing."

[3] *See also Sherman-Clay Co. v. Buffum & Pendleton*, 91 Or 352, 357, 179 P 241 (1919) ("[The predecessor of ORS 41.580(6)] excludes a lease for one year or less in duration * * *").

"* * * To claim that the agreement was for a 'permit' ignores the fact that the sole purpose of the permit was, as stated in plaintiff's First Amended Complaint, 'to allow the continued presence of the mobile home on space 4A.' Therefore, even if we accept plaintiff's argument that the agreement should be severed, the severed agreement for obtaining permits necessary to allow the continued presence of Mr. Abraham's mobile home on the site must involve an interest in land. Any other interpretation of the severed agreement makes no sense. Obtaining a permit without obtaining the use of the land is meaningless. * * *"[4] (Emphasis defendant's.)

Reduced to essentials, defendant's argument is that, in addition to the two promises by Pleasant that plaintiff identifies, there was a third promise that defendant would *allow* the permanent placement of plaintiff's buyer's mobile home on the rented space as well as *obtaining government* approval for the placement, and that the third promise created an interest in real property subject to ORS 41.580(5). The parties do not cite, and we do not find, Oregon case authority that is particularly useful in resolving that argument.

 It is clear that the Statute of Frauds is applicable to promises to convey that are dependent on contingencies, *Share v. Williams et ux,* 204 Or 664, 672-73, 277 P2d 775, 285 P2d 523 (1954), and to promises to create real property interests in third persons. *Masquart, et al v. Dick, et al,* 210 Or 459, 475-76, 310 P2d 742 (1957). Here, however, the real property interest element that plaintiff ascribes to the contract was not merely attenuated; it was nothing more than a contemplated possible consequence of Pleasant's performance of his promise to obtain county approval. Stated otherwise, there was no promise evidenced by this record that plaintiff's buyer or *his* mobile home could stay forever on the space plaintiff leased from defendant; the promise was that defendant would obtain county approval for the permanent *availability* of the space for *a* mobile home. According to plaintiff's evidence, Pleasant did not even agree that plaintiff's month-to-month tenancy of the space would last until the promise to

---

[4] Defendant argues that plaintiff's attempt to take the contract outside the statute depends on an impermissible severance of its terms for purposes of applying the Statute of Frauds. *See Wiggins v. Barrett & Associates,* 295 Or 679, 669 P2d 1132 (1983). Because we conclude that none of the terms of the contract is subject to the statute, we do not address the severability issue.

obtain county approval was performed. Nothing in the record suggests that *anyone's tenancy* of the space, as distinguished from the *availability* of the space for *a tenant,* was assured for more than one month. We conclude that no interest in real property was created by the oral contract, and we agree with plaintiff's other arguments, enumerated above, for concluding that the contract is not within the Statute of Frauds.

■ Defendant advances a number of alternative theories in support of his motion for summary judgment. Only one requires discussion. Defendant argues that, because plaintiff had notice on January 15, 1981, that the county had not approved the location of the mobile home on the rented space, his cause of action accrued on that date and that, therefore, the filing of the action in July, 1982, was barred by the one-year statute of limitations for actions arising under rental agreements. ORS 12.125.[5] However, as plaintiff argues, the January 15, 1981, notice from the county did no more than apprise him that the installation had not been approved, because arrangements for necessary inspections had not been made. The county's letter did not signify that defendant had *failed* to obtain approval, as opposed to suffering a momentary setback because he had not satisfied the inspection requirement. The notice provided plaintiff with no reasonable basis to believe that defendant's efforts to obtain approval would not continue or would be futile and, in fact, defendant later did apply for county approval.

■ Arguably, it might have been a better argument for defendant that plaintiff's cause accrued on June 11, 1981—more than a year before the action was brought—when the county *in fact* denied defendant's application. However, defendant would not have been entitled to summary judgment, even if he had made that argument. Plaintiff's affidavit states, with apparent reference to the oral agreement, that "the time limit set to obtain the necessary permits so the mobile home could be permanently placed on space 4A was when the mobile home was sold." That statement is evidence that the time for defendant's performance and, therefore, the accrual of plaintiff's cause of action were defined by the agreement to coincide with plaintiff's sale of the mobile home,

---

[5] Plaintiff does not argue that ORS 12.125 is not the applicable statute.

which occurred in September, 1981, less than a year before the action was instituted. The trial court erred in granting summary judgment.

Reversed and remanded.